UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

-against-

HENRY ANDRIXON,

                                    Defendant.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:  __5/29/2026__

25 Cr. 445 (AT)

**<u>ORDER</u>**

ANALISA TORRES, District Judge:

The three-count indictment in this case charges Defendant, Henry Andrixon, with bank fraud in violation of 18 U.S.C. §§ 1334 and 2, wire fraud in violation of 18 U.S.C. §§ 1343 and 2, and making false statements to a bank in violation of 18 U.S.C. §§ 1014 and 2 (the "Offenses"). *See* Indictment, ECF No. 2. Defendant moves to suppress "all evidence seized pursuant to the search warrants authorizing the Government to obtain the full contents and related information of the email accounts andybrk@aol.com and andrixonhenry@gmail.com" (the "Warrants"). Mot., ECF No. 18; *see also* Opp., ECF No. 21; Reply, ECF No. 29. For the reasons stated below, the motion is denied.

## BACKGROUND

The indictment alleges that from at least November 2018 through July 2023, Andrixon engaged in a scheme to submit false and fraudulent mortgage applications to several mortgage origination companies and lenders. *See* Indictment ¶ 1. The Government claims that Andrixon obtained these mortgages under false pretenses and using materially false statements and information, on behalf of third-party borrowers (the "Borrowers"), and at least once, on behalf of himself. *Id.* Andrixon is charged with having secured over 50 mortgages on behalf of the Borrowers as part of this scheme, totaling over $17 million, and obtaining a fee for his services from the Borrowers or a referral fee from a real estate broker. *Id.*

On June 20, 2025, the Government requested that the Court issue search warrants for stored electronic applications, which was supported by an Affidavit from Federal Bureau of Investigation ("FBI") Special Agent Dan Onove II (the "Affidavit").  *See* Opp. Ex. A at 1, 34, ECF No. 22.[1]  The Affidavit sets forth allegations regarding how the Special Agent knew that Andrixon owned and operated the andybrk@aol.com and andrixonhenry@gmail.com email accounts (collectively, the "Accounts") and how Andrixon used the Accounts in connection with the fraud scheme.  *See* Opp. Ex. A at 15–19, 25–30.

That same day, the Honorable Henry J. Ricardo authorized the Warrants after finding that there was probable cause to believe that the Accounts "contain[] evidence, fruits, and instrumentalities of crime," specifically wire fraud and bank fraud, false statements, and aggravated identity theft, in violation of Title 18, United States Code, §§ 1343, 1344, 1349, 1014, 1028A, and 2.  Opp. Ex. A at 35, 38, 41, 45.  On October 3, 2025, Andrixon was arrested in the Southern District of Florida, *see* 10/3/2025 ECF Entry, and on November 20, 2025, the Government produced to Andrixon the evidence it obtained pursuant to the Warrants, *see* Opp. at 4.

## DISCUSSION

I.    <u>Legal Standard</u>

The Fourth Amendment requires warrants to be issued only "upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."  U.S. Const. amend. IV.  An application for a search warrant "must be supported by an affidavit that 'sets forth particular facts and circumstances underlying

---

[1] The Government attached the Affidavit and Warrants to its opposition as Exhibit A.  Because the Affidavit and the Warrants contain references to victims, uncharged individuals, and other third parties, the Government submitted, and the Court accepted, the exhibit under seal.

the existence of probable cause, so as to allow the magistrate to make an independent evaluation of the matter." *United States v. Sosunov*, No. 17 Cr. 350, 2018 WL 2095176, at *8 (S.D.N.Y. May 7, 2018) (quoting *Franks v. Delaware*, 438 U.S. 154, 165 (1978)) (cleaned up).  A magistrate judge reviewing the warrant must determine whether, based on the totality of the circumstances, the application sets forth a sufficient showing of probable cause and particularity, and if so, the magistrate will sign the warrant.  *See United States v. George*, 975 F.2d 72, 76 (2d Cir.1992) ("The particularity requirement prevents this sort of privacy invasion and reduces the breadth of the search to that which a detached and neutral magistrate has determined is supported by probable cause."); *see also Illinois v. Gates*, 462 U.S. 213, 238–39 (1983).  On a motion to suppress, the reviewing court must pay "great deference" to the magistrate judge's determination.  *Spinelli v. United States*, 393 U.S. 410, 419 (1969), *abrogated on other grounds by Gates*, 462 U.S. 213.

> A. Particularity

Andrixon argues that the Warrants lacked particularity in violation of the Fourth Amendment because they "authorized the seizure of virtually every piece of data associated with the [A]ccounts, without meaningful limitation."  Mot. at 3.  Andrixon contends that the Warrants should have confined the search in the Accounts to "specific borrowers or loan applications," "communications with identified mortgage companies," "particular file types or keywords," and "defined categories of documents tied to the alleged offenses."  *Id.*

"To satisfy the Fourth Amendment's particularity requirement, a warrant must meet three criteria:  (1) it 'must identify the specific offense for which the police have established probable cause'; (2) it 'must describe the place to be searched'; and (3) it 'must specify the items to be seized by their relation to designated crimes.'"  *United States v. Purcell*, 967 F.3d 159, 178 (2d

Cir. 2020) (quoting *United States v. Galpin*, 720 F.3d 436, 445–46 (2d Cir. 2013)).  Courts do not demand "a perfect description of the data to be searched and seized," and search warrants "covering digital data may contain some 'ambiguity.'"  *United States v. Ulbricht*, 858 F.3d 71, 100 (2d Cir. 2017) (quoting *Galpin*, 720 F.3d at 446), *overruled on other grounds by Carpenter v. United States*, 585 U.S. 296 (2018).  Ambiguity in the warrant may be tolerated "so long as law enforcement agents have done the best that could reasonably be expected under the circumstances, have acquired all the descriptive facts which a reasonable investigation could be expected to cover, and have [e]nsured that all those facts were included in the warrant."  *Galpin*, 720 F.3d at 446 (internal quotation marks and citation omitted).  "[A] search warrant does not necessarily lack particularity simply because it is broad."  *Ulbricht*, 858 F.3d at 100.  Instead, particularity is satisfied if the warrant enables "the executing officer to ascertain and identify with reasonable certainty those items that the magistrate has authorized him to seize."  *George*, 975 F.2d at 75.  A warrant that provides an "illustrative list of seizable items" passes muster under the Fourth Amendment's particularity requirement "because the officers executing the warrant must exercise some minimal judgment as to whether a particular document falls within the described category."  *United States v. Riley*, 906 F.2d 841, 844–45 (2d Cir. 1990).

The Warrants satisfy the three *Purcell* elements.  First, the Warrants identify the specific offenses for which the FBI Special Agent established probable cause—wire fraud and bank fraud, false statements, and aggravated identity theft, in violation of Title 18, United States Code, §§ 1343, 1344, 1349, 1014, 1028A, and 2.  Opp. Ex. A at 35, 38, 41, 45.

Second, the Warrants describe the places to be searched as the Accounts.  *See id.* at 37, 43; *see e.g.*, *United States v. Scully*, 108 F. Supp. 3d 59, 95 (E.D.N.Y. 2015) ("Notably, every case of which we are aware that has entertained a suppression motion relating to the search of an

email account has upheld the Government's ability to obtain the entire contents of the email

account to determine which particular emails come within the search warrant." (quoting *In the*

*Matter of a Warrant for All Content & Other Info. Associated with the Email Acct. xxxxxxx*

*gmail.com Maintained at Premises Controlled by Google, Inc.*, 33 F. Supp. 3d 386, 394

(S.D.N.Y. 2014), *as amended* (Aug. 7, 2014) (citing cases)); *United States v. Ray*, 541 F. Supp.

3d 355, 398 (S.D.N.Y. 2021) (finding a search warrant to satisfy the second *Purcell* element

when it "identified the email and iCloud accounts to be searched.")

Third, the Warrants authorize law enforcement personnel to review produced records

from the Accounts to locate "any evidence, fruits, evidence, and instrumentalities" relating to the

Offenses, and include a list of evidence relating to the Offense that may be searched.  Opp. Ex. A

at 38–40, 45–47.  The Court rejects Andrixon's argument that the Warrants must confine the

search to certain applications, mortgage companies, file types, keywords, or categories of

documents to be constitutional.  *See* Mot. at 3.  The Affidavit specifically addresses the

limitations of the confined searches that Andrixon proposes:

> In conducting this review, law enforcement personnel may use various methods to locate evidence, fruits, and instrumentalities of the . . . Offenses, including but not limited to undertaking a cursory inspection of all emails within the Subject Account.  This method is analogous to cursorily inspecting all the files in a file cabinet in an office to determine which paper evidence is subject to seizure. Although law enforcement personnel may use other methods as well, particularly including keyword searches and document review programs, including machine learning enabled software, I know that such methods are typically inadequate to detect all information subject to seizure.  As an initial matter, keyword searches work only for text data, yet many types of files commonly associated with emails, including attachments such as scanned documents, pictures, and videos, do not store data as searchable text.  Moreover, even as to text data, keyword searches cannot be relied upon to capture all relevant communications in an account, as it is impossible to know in advance all of the unique words or phrases that investigative subjects will use in their communications, and consequently there are often many communications in an account that are relevant to an investigation but that do not contain any keywords that an agent is likely to search for.

Opp. Ex. A at 32–33.  Additionally, the illustrative lists of seizable evidence within the Warrants satisfy the particularity requirement by allowing law enforcement executing the warrant to exercise judgment regarding which evidence falls within the categories described in the Warrants.  *See Riley*, 906 F.2d at 845.  That is, the broadness of the Warrants does not make them unconstitutional.  *See Ulbricht*, 858 F.3d at 100.

### B.  Overbreadth

Andrixon contends that the Warrants are temporally overbroad because the start date is October 2018, which "[p]redates any alleged criminal transaction," to the present, therefore "authorizing ongoing seizure."  Mot. at 2–3.

A warrant "is defective if it is broader than can be justified by the probable cause upon which the warrant is based."  *Galpin*, 720 F.3d at 446 (internal citation omitted).  "In determining whether a warrant is overbroad, courts must focus on 'whether there exists probable cause to support the breadth of the search that was authorized.'"  *United States v. Zemlyansky*, 945 F. Supp. 2d 438, 464 (S.D.N.Y. 2013) (quoting *United States v. Hernandez*, No. 09 Cr. 625, 2010 WL 26544, at *8 (S.D.N.Y. Jan. 6, 2010)).  Overbreadth, however, is distinct from the separate context of the seizure of an item as a result of the search itself.  *United States v. Ulbricht*, 14 Cr. 68, 2014 WL 5090039, at *14 (S.D.N.Y. Oct. 10, 2014), *aff'd*, 858 F.3d 71 (2d Cir. 2017).  In the context of a search warrant related to an email account, "[c]ourts in this Circuit . . . have uniformly held that law enforcement need not rely upon an email host company or any other private party to sift through emails to determine what is relevant and that it may obtain a warrant to request all emails from an account."  *Ray*, 541 F. Supp. at 399.

The Warrants are not temporally overbroad.  The Affidavit includes allegations to support probable cause that there is evidence of crime in the Accounts prior to November

2018—for example, that Andrixon submitted his own mortgage application in March 2016. *See*

Opp. Ex. A at 19. In that application, Andrixon allegedly claimed he was the owner of one of

the entities that he fraudulently identified as the employers of the Borrowers in other mortgage

applications. *See id.* at 16–19. The Warrants are also not overbroad for allowing the search to

continue into the present. Although the lack of a date limitation "*may* in certain situations render

a warrant insufficiently particular, it is also settled that courts in this Circuit routinely deem

warrants sufficiently particular that lack any temporal limitation, agreeing that although a time

frame is relevant, [] there is no apparent consensus as to when one is required." *United States v.*

*Wallace*, No. 24 Cr. 411, 2025 WL 1435066, at *5 (S.D.N.Y. May 19, 2025) (emphasis in

original) (internal citation omitted) (citing *United States v. Jacobson*, 4 F. Supp. 3d 515, 526

(E.D.N.Y. 2014) and quoting *United States v. Ayala*, 740 F. Supp. 3d 314, 336 (S.D.N.Y. 2024)).

This is particularly true in actions like this, which involves alleged criminal conduct that was

complex and extended over a long period of time. *See, e.g.*, *Jacobson*, 4 F. Supp. 3d at 525–26.

    C.  Probable Cause

    Andrixon argues that the Warrants are unconstitutional because the Affidavit "fail[s] to

establish probable cause that all—or even most—of the data in [] Andrixon's accounts would

contain evidence of criminal activity." Mot. at 3–4. He also contends that the Warrants fail to

establish a "sufficient nexus between the alleged offenses and the entire contents" of the

Accounts. *Id.* at 4. Not so. Andrixon' s arguments conflate the Warrants' authorization

regarding what the Government may search and what the Government may seize. Although the

Warrants authorized the seizure of the entirety of the Accounts to search for an itemized list of

seizable items related to the Offenses, this does not turn the Warrants into unconstitutional

general warrants that would allow for an "exploratory rummaging in a person's belongings."

*Ulbricht*, 2014 WL 5090039, at *9 (quoting *Andresen v. Maryland*, 427 U.S. 463, 480 (1976)).

"Indeed, it is important not to confuse the separate concepts of the seizure of an item—which were quite specifically identified but which were seized in their entirety—with the search itself. The search is plainly related to the specific evidence sought. It has long been perfectly appropriate to search the entirety of a premises or object as to which a warrant has issued based on probable cause, for specific evidence as enumerated in the warrant, which is then to be seized." *Id.* at *14.[2]

Accordingly, there was probable cause to search the entirety of the Accounts for specific "evidence, fruits, and instrumentalities" related to the Offenses. *See* Opp. Ex. A at 38–40, 45–47. In other words, "[t]his case simply involves the digital equivalent of seizing the entirety of a car to search for weapons located within it, where the probable cause for the search is based on a possible weapons offense." *Ulbricht*, 2014 WL 5090039, at *14.

---

[2] For the same reasons explained above, the Court rejects Andrixon's argument that the Warrants permitted the Government to apply an impermissible two-step process to "seize everything first" and "decide later what is relevant." Mot. at 5. The Warrants allowed the Government to seize the Accounts to search for specific "fruits, evidence, and instrumentalities" of the Offenses. *See* Opp. Ex. A at 38–40, 45–47.

**CONCLUSION**[3]

For the reasons stated above, the motion to suppress is DENIED.  The Clerk of Court is respectfully directed to terminate the motions at ECF Nos. 17 and 18.

SO ORDERED.

Dated: May 29, 2026
      New York, New York

                               ANALISA TORRES
                        United States District Judge

---

[3] Andrixon also argues that suppression is warranted because the "defects in the . . . Warrants were facially obvious" and "[n]o objectively reasonable officer could believe" that the Warrants "satisfied the Fourth Amendment's particularity and overbreadth requirements."  Mot. at 5.  "[U]nder the good faith exception[,] evidence that is 'obtained in objectively reasonable reliance on a subsequently invalidated search warrant' does not require suppression."  *Wallace*, 2025 WL 1435066, at *7 (quoting *United States v. Leon*, 468 U.S. 897, 922 (1984)); *see also Herring v. United States*, 555 U.S. 135, 140 (2009) ("[E]xclusion 'has always been our last resort, not our first impulse.'" (quoting *Hudson v. Michigan*, 547 U.S. 585, 591 (2006))).  As stated above, the Warrants are constitutionally valid, and the good faith exception, therefore, is inapplicable in this case.